WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>        Plaintiff,<br><br>vs.<br><br>AutoZone, Inc., a Nevada corporation,<br><br>        Defendant. | No. CV 06-926-PHX-SMM<br><br>**ORDER** |

Pending before the Court is Defendant AutoZone, Inc.'s ("AutoZone") Motion for Summary Judgement. (Dkt. 79.) Plaintiff Equal Employment Opportunity Commission ("EEOC") opposes Defendant's motion on grounds that genuine questions of material fact remain. Fed. R. Civ. P. 56. After careful consideration, the Court finds the following.

## BACKGROUND

**A.   Statement of Facts**

Stacy Wing ("Wing") was hired to work at AutoZone Store 2737 ("2737") in the first half of 2003. (Wing Dep. at 46-47.) At the time Wing was hired, Jose Contreras ("Contreras") was the store manager of 2737. (Def.'s Statement of Material Facts ¶ 2.) Contreras resigned as store manager in December 2003. (*Id.* ¶ 69.) Within the first month of being employed, Wing reported by phone to the Regional Human Resources Manager in charge of 2737 that she had been sexually harassed by Contreras. (Anderson Dep. at 49.)

1  At the time, Scott Anderson ("Anderson") was the Regional Human Resources Manager
2  responsible for 2737. (Def.'s Statement of Material Facts ¶ 17.) Several days thereafter,
3  Anderson went to 2737 to investigate the report. (*Id.* ¶ 31.) While there, Anderson spoke
4  with Wing, Contreras, and allegedly spoke with several other employees of 2737. (*Id.* ¶¶ 32,
5  36, 37.) AutoZone could not corroborate Wing's reports of harassment based on this
6  investigation. (*Id.* ¶¶ 36, 37.) Anderson did remind Contreras of AutoZone's policies
7  regarding harassment and retaliation. (*Id.* ¶ 36.) No other action was taken by Anderson at
8  this time. (*Id.*) Wing alleges that physical and verbal sexual harassment continued during
9  the remainder of the year. (Wing Dep. at 125-127.)

10  In December 2003, Joe Acuna ("Acuna"), who also worked at 2737, witnessed
11  Contreras sexually harassing Wing in a physical nature. (Def.'s Statement of Material Facts
12  ¶ 49.) Acuna reported his observations to Anderson. (*Id.*) Anderson confirmed Acuna's
13  report by watching a surveillance video of the incident. (*Id.* ¶ 56.) Consequently, Anderson
14  was able to identify Contreras engaging in the sexual harassment. (*Id.*) Anderson met with
15  and informed Contreras that AutoZone possessed a video of him sexually harassing Wing.
16  (*Id.* ¶ 68.) Anderson told Contreras "he could either: (1) be suspended during the completion
17  of the investigation and then be fired; or (2) resign immediately." (*Id.*) Contreras
18  immediately resigned. (*Id.* ¶ 69.)

19  Wing claims that after Contreras resigned, she was denied a requested day off and was
20  scheduled for four consecutive 12-hour shifts. (Def.'s Statement of Material Facts ¶ 74.)
21  The day off Wing requested was January 19, 2004; however, Wing does not recall why she
22  requested this day off. (*Id.* ¶ 75.) Further, Wing does not remember who allegedly denied
23  her request for time off nor what reason was given for the alleged denial. (*Id.*) The
24  consecutive shifts Wing complains of allegedly occurred between the day she was hired and
25  January 29, 2004. (Wing Dep. at 175-176.) Wing does not recall when the four shifts
26  actually occurred or who scheduled her for the specific shifts. (*Id.* at 178.)

27
28

1    Wing further claims that she was denied a promotion for the position of Parts Service
2 Manager ("PSM") in retaliation for reporting the sexual harassment. (Def.'s Statement of
3 Material Facts ¶ 74.) Wing was initially hired as a part-time customer service representative
4 at 2737. (Wing Declaration ¶ 3.) On February 23, 2004, Wing was promoted to "full-time
5 sales." (Def.'s Statement of Material Facts ¶ 79.) Thereafter, in 2005, Wing was promoted
6 to the position of commercial specialist. (*Id.*) Wing did not hold the position of PSM. (*Id.*
7 ¶ 77.) She twice completed the training required by AutoZone for a promotion to a PSM
8 position. (Wing Declaration ¶ 44; "Pl.'s Local Rule of Practice 56.1(b) Resp. to Def.'s
9 Statement of Facts; Pl.'s Separate Statement of Facts" ("Pl. SoF") ¶ 112.) The first time
10 Wing completed this training, Contreras was the store manager. (Wing Declaration ¶ 44.)
11 The training occurred sometime after Anderson responded to Wing's first sexual harassment
12 complaint, but before Acuna lodged his complaint on Wing's behalf. (*See* Wing Dep. at 72-
13 77.) Wing claims that Contreras told her the reason she was not promoted to PSM after
14 taking the training was because she had complained about him to Scott Anderson. (Wing
15 Declaration ¶ 46.) After Contreras resigned, a temporary store manager gave Wing the pass
16 code necessary to work as a PSM; however, Wing was not told that she was being promoted
17 to that position. (*Id.* ¶ 47.) Shortly thereafter the code was deactivated by a district
18 manager. (*Id.* ¶ 49.) Wing participated in the PSM training a second time under the new
19 store manager, Howard Brown ("Brown"). (*Id.* ¶ 50.) Wing claims that Brown told her that
20 AutoZone had "no intention of promoting [her] to PSM because [she] had gone to an outside
21 agency." (*Id.* ¶ 51.) Wing claims a district manager, Scott Schmitt, told her that she was not
22 being promoted to PSM because she "did not keep [her] mouth shut and had gone to an
23 outside agency." (*Id.* ¶ 52.)
24 ///
25 ///
26 ///
27
28                                         - 3 -

1    **B.    Procedural History**

2    Wing filed a complaint against AutoZone with the EEOC on January 29, 2004[1]. On
3    March 30, 2006, the EEOC filed suit, on behalf of Stacy Wing, under Title VII of the Civil
4    Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991. ("Compl.") The
5    EEOC alleged that AutoZone (1) engaged in unlawful employment practices by
6    discriminating against Stacy Wing on the basis of her sex by subjecting her to sexual
7    harassment by a manager thereby creating a hostile work environment, (2) failed to exercise
8    reasonable care to prevent and/or promptly correct the sexual harassment, and (3) engaged
9    in unlawful retaliatory practices by, *inter alia*, withdrawing a promotion, because she
10   complained of the harassment to the AutoZone Human Resources Department and/or because
11   she assisted or participated in the EEOC investigation of the unlawful sexual harassment.
12   (*Id.* ¶¶ 7-10.)

**STANDARD OF REVIEW**

**A.    Summary judgement**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the

---

[1] This complaint alleged gender discrimination, specifically sexual harassment, and retaliation, "being scheduled for 12 hour shifts for 4 consecutive days, denied off on January 19, 2004, demoted from Parts Sales Manager position and denied full-time benefits even though I work full-time hours." (Wing Dep. Ex. 6 )

- 4 -

evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

**DISCUSSION**

**A.    Sexual Harassment**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This anti-discrimination principle "is violated when sexual harassment is sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive working environment." *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2005) (*quoting Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with

an individual's work performance or creating an intimidating, hostile, or offensive working environment. 29 C.F.R. § 1604.11(a). To be actionable under Title VII, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998).

As AutoZone has "assumed" the EEOC can establish a claim for *prima facie* sexual harassment, no further analysis of this issue is necessary for the purpose of this motion. (Def.'s Mem. in Supp. of Mot. for Summ. J. at 10.)

### B.     Vicarious Liability for Sexual Harassment

"[A]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher,* 542 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "Notice of the sexually harassing conduct triggers an employer's duty to take prompt corrective action that is reasonably calculated to end the harassment." *Swenson v. Potter*, 271 F.3d 1184, 1192 (9th Cir.2001) (internal quotations omitted). However, the Supreme Court provides a defense against vicarious liability:

> "[A] defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action."

*Faragher*, 542 U.S. at 807-808; *Ellerth*, 542 U.S. at 765. The Court will analyze each element individually.

### 1.     Employer Exercised Reasonable Care

The Ninth Circuit has held that the first element of the *Faragher/Ellerth* affirmative defense includes both preventive and remedial measures. *Kohler v. Inter-Tel Tech.*, 244 F.3d 1167, 1180-1181 (9th Cir. 2001). "The legal standard for evaluating an employer's efforts

- 6 -

to prevent and correct harassment . . . is not whether any additional steps or measures would have been reasonable if employed, but whether the employer's actions as a whole established a reasonable mechanism for prevention and correction." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1177 (9th Cir. 2003) (citation omitted).

### a. Preventive Measures

An employer's adoption and dissemination of an anti-harassment policy can establish that the employer exercised reasonable care to prevent sexual harassment in the workplace. *Kohler*, 244 F.3d at 1180 (employer had clearly defined definitions, consequences, and reporting procedures for sexual harassment in its policy, ensured employees received and understood the policy on their first day of work, and included a supplemental notice specifically summarizing the policy).

The reasonableness of an employer's efforts can depend on the extent of the dissemination. *Faragher*, 524 U.S. at 808. In *Faragher*, the City of Boca Raton had a policy, but failed to adequately disseminate it. *Id.* at 809. This resulted in the Court holding "as a matter of law that the City could not be found to have exercised reasonable care to prevent the supervisors' harassing conduct." *Id.* at 808.

AutoZone contends that its efforts to adopt and disseminate a sexual harassment policy are sufficient to meet the preventive element of the *Faragher/Ellerth* affirmative defense. As support, AutoZone has submitted sections of its 2002 and 2004 Employee Handbooks, each of which contain substantially identical language regarding sexual harassment and reporting procedures therefor. (Def.'s Reply in Supp. of its Mot. for Summ. J. Ex. A.; Statement of Material Facts in Supp. of Mot. for Summ. J. Ex. B.) According to Wing, at some point during her employment, she received *an* Employee Handbook. (Wing Dep. at 61-62). AutoZone cites Wing's deposition, which shows evidence that when Wing was hired, she was aware that AutoZone had a policy prohibiting sexual harassment. (*Id.* at

66.) Wing knew that a procedure existed to report sexual harassment; however, she could not recall exactly what that procedure entailed. (*Id.*)

The EEOC argues that there is no evidence Wing or Contreras received the handbook prior to, or during the time Wing was being sexually harassed by Contreras. (Pl. SOF ¶ 181.) The EEOC further contends there is no evidence Contreras himself ever received training on AutoZone's sexual harassment policy. (*Id.* ¶ 182.) Furthermore, the EEOC maintains that there is no evidence that AutoZone trained anyone at the store manager level or below with regard to sexual harassment beyond an initial issuance of the handbook containing the policy. (Arias Dep. at 15-16.)

According to the record, the Court agrees that there is no evidence that Contreras knew a sexual harassment policy existed at the time the initial harassment occurred. As to Wing, there is evidence only as to her knowledge of "a policy" and that at some point during her employment, she received the 2004 handbook. Therefore, although a sexual harassment policy may have existed and may have been reasonable on its face, similar to the policy in *Kohler*, there is no evidence in the instant case of adequate dissemination. As in *Faragher*, a failure to disseminate can render a policy, reasonable on its face, insufficient to raise an affirmative defense. Therefore, the Court finds that a legitimate question exists as to whether AutoZone's preventive measures were reasonable for the purpose of asserting a *Faragher/Ellerth* affirmative defense, and consequently denies AutoZone's motion for summary judgment.

### b. Remedial Measures

Assuming AutoZone established the first prong of the *Faragher/Ellerth* affirmative defense, AutoZone must still establish that it took remedial measures to end the sexual harassment.

The reasonableness of a remedy for sexual harassment depends on its ability to: (1) stop harassment by the person who engaged therein and (2) persuade potential harassers to

- 8 -

refrain from sexually harassing conduct. *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 875-876 (9th Cir. 2001) (citation omitted). The reasonableness of the remedial measure must track the nature and/or severity of the alleged conduct. *See Swenson v. Potter*, 271 F.3d 1184, 1192-1193 (9th Cir. 2001). When the employer fails to undertake any remedial measure, or where the remedial measure undertaken does not put an end to the current harassment and deter future harassment, liability attaches for both the past harassment and any future harassment. *Nichols*, 256 F.3d at 875-876.

AutoZone contends that, given the information presented, its efforts were reasonable and sufficient to meet the remedial measure element of the *Faragher/Ellerth* affirmative defense. The EEOC maintains that AutoZone's efforts in both of the investigations fail to meet its burden under *Faragher/Ellerth*. To evaluate the reasonableness of AutoZone's response to the first investigation, the Court must evaluate (1) what conduct AutoZone was responding to and (2) what measures AutoZone took in response to the complaints of harassment by the Plaintiff. *See id.* Three issues have been raised pertaining to the remedial measures taken by AutoZone; the Court will address each individually.

### I. Nature of the Harassment

Within weeks of being hired, Wing called Anderson, alleging she was being sexually harassed by Contreras. (Wing Dep. at 105-106.) AutoZone claims she complained only of verbal sexual harassment during this phone call. (Anderson Dep. at 49.) AutoZone further contends that, during the subsequent interview at 2737 between the two, Wing complained only of verbal sexual harassment. (*Id.* at 58.) Wing, however, contends that it was not merely verbal harassment that she complained of. (Wing Dep. at 118.) She argues that her complaint consisted of reports of physical harassment as well. *Id.* AutoZone claims Wing's testimony on the subject of what type of harassment is "clear," and is limited to verbal harassment. (Def.'s Reply in Supp. of its Mot. for Summ. J. at 5.) However, although AutoZone argues Wing only reported verbal sexual harassment, it does acknowledge that

- 9 -

Wing reported to Anderson the incident wherein Contreras "exposed himself" to her. (*Id.* at 5 n.6.) The Court finds this act is not "clearly" verbal harassment. *Id.* Wing contends she told Anderson that Contreras had "physically touched [her] in a sexual manner." (Wing Dep. at 118.) According to Wing, this interview was preserved in writing, where "[Anderson] would write out a question and then [Wing] would answer it." *Id.* at 117. AutoZone has claimed this document has been lost, and therefore is unable to produce a record of the interview. (Pl. SOF ¶ 137.)

AutoZone correctly notes that spoliation is a discovery offense. The EEOC's request for an adverse inference based on this and other lost documents came well after the discovery deadline, therefore the Court will deny this request. However, without this document to clarify a significant discrepancy in material factual recollections, the record consists of two contradictory statements regarding what was said during the phone call and what was reported and discussed at the subsequent interview. As the substance of these conversations would be material in evaluating the reasonableness of the remedial measures taken by AutoZone in response to Wing's allegations, the discrepancy in material facts is sufficient to establish a legitimate question of fact. The Court therefore denies AutoZone's motion for summary judgement on this issue.

### ii. Method of Investigation

AutoZone argues the "pertinent legal issue is what Mr. Anderson did upon receiving the [initial] report." (Def.'s Reply in Supp. of its Mot. for Summ. J. at 5.) It is undisputed that Anderson went to 2727 shortly after receiving the initial report and interviewed Wing. (Def.'s Statement of Material Facts ¶ 31.) During the interview, Wing provided Anderson with the names of five employees of 2737 who she claimed would corroborate her allegations. (Anderson Dep. at 60-61.) The names included: Luz Hernandez (now Luz Gomez), Steve Corbeil, Raiza Bracho, Hector Barajas, and Justin Pierce. *Id.* AutoZone claims Anderson interviewed all five of these potential witnesses, as well as Contreras. (*Id.*

1  at 65-66.) Each of these interviews were allegedly identical in form: "getting a verbal
2  statement and then following that up in writing with where [sic] [Anderson] would write
3  questions and [the employee] would write answers." *Id.* at 67. According to AutoZone,
4  Anderson gathered all of these statements and sent them to AutoZoner Relations (part of
5  AutoZone's corporate counsel). *Id.* at 76-77. Anderson claims the allegations could not be
6  corroborated. *Id.* at 70.

7  The EEOC, however, claims a legitimate issue exists as to whether AutoZone
8  conducted a reasonable investigation because AutoZone has no records pertaining to Wing's
9  sexual harassment claim, thereby prohibiting the EEOC, as well as this Court, from
10 evaluating its reasonableness. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 8.) Further, the
11 EEOC alleges Anderson's investigation cannot be as complete as he has claimed. *Id.* Both
12 Luz Hernandez and Hector Barajas have stated that the only time they spoke to anyone
13 regarding sexual harassment between Wing and Contreras was "around the time Contreras
14 was fired." (Barajas Dep. at 30; Gomez Declaration ¶ 8.) Contreras left AutoZone as a result
15 of a separate investigation of sexual harassment approximately seven months after Anderson
16 claims his initial investigation occurred. (Def.'s Statement of Material Facts ¶¶ 63-69.)

17 In response, AutoZone claims that a legitimate issue of material fact cannot be created
18 by someone's inability to recall information. (Def.'s Reply in Supp. of its Mot. for Summ.
19 J. at 5 n.7.) For example, AutoZone claims that because Gomez and Barajas cannot
20 remember speaking with Anderson does not mean it did not occur. In support of its
21 assertion, AutoZone cites two **unpublished** opinions: *Flores v. First Penn Pac. Life Ins.*, 215
22 F.3d 1332 (9th Cir. 2000) (not reported in F.3d) and *Mercon Coffee Corp. v. Beanbag
23 Storage Co.*, 1992 WL 1352743 (N.D. Cal. 1992))[2]. In both *Flores* and *Mercon Coffee*, the

---

[2]This Court is not bound by unpublished opinions. Further, AutoZone's reliance on the aforementioned cases is misplaced, as even a cursory reading of the facts of those cases reveals they are inapposite to the case before the Court.

- 11 -

1  courts found the plaintiffs' inability to recall a discussion or terms of a document were
2  directly contradicted by documentation that they *had* made those statements and were aware
3  of what they were doing when they did so. *Mercon*, 1992 WL 1352743, *1; *Flores*, 215 F.3d
4  at 1332, *1. In the present case, AutoZone's inability to retain or locate the documentation
5  of Anderson's investigations necessarily cannot provide the type of support the courts relied
6  on in AutoZone's cited cases. The Court therefore denies AutoZone's motion for summary
7  judgment on this issue.

### iii.  Sufficiency of Remedial Measures

The sufficiency of the remedial measures undertaken by AutoZone is entirely dependent on the nature of the allegations. *Swenson*, 271 F.3d at 1192-1193. It is impossible to evaluate the reasonableness of this element when the nature of the allegations remains disputed. As this Court has ruled above that material questions remain with regard to what the initial complaints made by Wing to Anderson were, the Court will deny AutoZone's motion for summary judgment on this issue.

### 2.  Employee Unreasonably Failed to Take Advantage

The second element of the *Faragher/Ellerth* defense is met when an employer has a complaint or reporting procedure designed to handle sexual harassment claims, and the employee unreasonably fails to take advantage of it. *Faragher*, 542 U.S. at 807-808. AutoZone argues that Wing's "conduct in waiting to make an initial report and then failing to make any subsequent report is unreasonable as a matter of law." (Def.'s Mem. in Supp. for Mot. for Summ. J. at 13.)

To bolster its position, AutoZone cite three cases to provide examples of employee conduct that courts have deemed unreasonable. *Hardage*, 427 F.3d at 1188; *Molly D.*, 339 F.3d at 1178; *Molina v. Phoenix High School Dist.*, 2007 WL 1412530, *8 (D. Ariz. 2007) (J. McNamee). In *Hardage*, the employee waited six (6) months to report the harassment; the plaintiff in *Molly D.* waited an entire year. Wing, on the other hand, reported being

- 12 -

1  sexually harassed to Jim Monti, the district manager responsible for 2737, "shortly after
2  [she] started working [at AutoZone]", and then received Anderson's phone number. (Wing
3  Dep. at 43; Def.'s Statement of Material Facts ¶ 19.)  At most, Wing waited "a couple of
4  weeks" to call Anderson to report Contreras's sexual harassment.  (Def.'s Statement of
5  Material Facts ¶¶ 23-24.) In *Molina*, the employee "acknowledged receiving the [Employee
6  Conduct/Discipline] Handbook, reading the portions regarding Defendant's harassment
7  policy and understanding the procedure for reporting sexual harassment" and "admitted to
8  being aware of the policies and procedure set forth in the Handbook" and yet "did not follow
9  the reporting procedures set forth in the Handbook." *Molina*, 2007 WL 1412530, *7-8. In
10 the instant case, there remains an issue as to when Wing received AutoZone's handbook
11 which contained the sexual harassment policy.[3]  *See* discussion *supra* at 7-8.  Assuming
12 *arguendo* that Wing did receive the handbook at the time she was hired, the evidence remains
13 that Wing was aware that steps existed to report sexual harassment, but could not recall *what*
14 *those steps were*.  (Wing Dep. at 66) (emphasis added).   This distinguishes Wing's
15 "understanding" of the procedure and "awareness" of the reporting policies from the plaintiff
16 in *Molina*.

17     AutoZone further contends that Wing's failure to make subsequent reports of the
18 ongoing sexual harassment constitutes unreasonable failure.  Wing alleges she left three
19 messages for Anderson following his initial investigation, however Anderson failed to return
20 her calls. (Wing Dep. at 144-150.) Anderson denies such messages existed. (Anderson Dep.
21 103-104.)  Further, the Ninth Circuit has continuously held that "harassment is to be
22 remedied through actions targeted at the *harasser*, not at the victim." *Intlekofer v. Turnage*,
23 973 F.2d 773, 780 (9th Cir. 1992) (emphasis in original); *Nichols*, 256 F.3d at 876
24 (employee's failure to report further harassment was not a defense to liability).  The Court

---

26  [3]Either the 2002 or 2004 handbook, as they are substantively identical regarding
27 sexual harassment policies.

- 13 -

finds a genuine issue of material fact exists as to whether Wing acted reasonably in her attempts to contact AutoZone, and consequently denies AutoZone's motion for summary judgment on this issue.

### 3. Presence of Tangible Employment Action

A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Ellerth*, 524 U.S. at 761. When bringing a suit against an employer in district court, "a plaintiff must have raised that claim or a like and reasonably related claim in an administrative action." *Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1997). This liberal reading of the administrative charge has been recognized in the circuit for decades: "When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge . . ." *Oubichon v. North Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) (recognizing federal subject matter jurisdiction over claims of action not explicit in the original EEOC charge). Title VII sets up a "remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *See Fed. Exp. Corp. v. Holowecki,* 552 U.S. ____, 128 S.Ct. 1147, 1158 (2008) (citations omitted).

The EEOC alleges AutoZone "withdr[ew] Ms.Wing's promotion to a [PSM] position." (Compl. ¶ 10.) This claim is essentially identical to a failure to promote claim, which is explicitly recognized in *Ellerth* as a tangible employment action. *Ellerth*, 524 U.S. at 761. AutoZone challenges the EEOC's assertion of a failure to promote claim as a tangible employment action. (Def.'s Reply in Supp. of its Mot. for Summ. J. at 6.) It correctly states that Wing originally alleged she was "demoted from [her] [PSM] position." (Wing Dep. Ex 6.) AutoZone is correct that a "demotion claim is **completely distinct** from that of a failure to promote claim." (Def.'s Reply in Supp. of its Mot. for Summ. J. at 7)

- 14 -

(emphasis in original). However, given the liberal interpretation mandated by precedent, this Court will not hold a lay-complainant to a practitioner's standard when making allegations in an EEOC complaint that may, unbeknownst to the claimant, have a specific meaning as a legal term of art. Consequently, this Court finds a claim of retaliatory demotion to be "like or reasonably related" to a claim of retaliatory failure to promote. *Serpe v. Four-Phase Sys., Inc.*, 718 F.2d 935, 937 (9th Cir. 1983).

The only support AutoZone offers for its position is an unreported, district case: *EEOC v. Rest. Mktg. Assoc., Inc.* 1983 WL 608 (D. Ariz. 1983). The Court finds AutoZone's reliance on this case misplaced. In *Restaurant Marketing Associates, the court* erroneously mentioned the "Ninth Circuit has never been faced with a case which presents the question of whether charges outside those asserted in the determination letter are allowable in a subsequent action by the E.E.O.C." *Id.,* *1. The Circuit had, two months prior to the decision in *Restaurant Marketing Associates*, held "[t]he EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Serpe*, 718 F.2d at 937. Within the case AutoZone has cited, the court quoted a Sixth Circuit opinion, "[i]t is clear that the recitation of a claim in the determination letter is not a prerequisite to the assertion of such claim by a private litigant. This Court has not been presented with a sufficient justification for applying a different rule with regard to claims made by the E.E.O.C. We therefore decline to hold that the recitation of each claim of discrimination is a rigid prerequisite to the assertion of those claims by the E.E.O.C. at trial." *Rest. Mktg. Assoc., Inc.* 1983 WL 608, *1-2.

The Court finds the alleged reasons for AutoZone's failure to promote Wing, if proven, would constitute a tangible employment action, thereby preventing AutoZone from raising the defense set forth in *Faragher/Ellerth*. Questions of material fact remain regarding why Wing was not promoted to a PSM position. Therefore, the Court will deny AutoZone's motion for summary judgment on this issue.

### C.     Retaliation

Employers are prohibited from discriminating or retaliating against an employee if that employee has "opposed any . . . unlawful employment practice . . . [or] because he has made a charge, testified, assisted, or participated in any manner in an investigation . . ." 42 U.S.C.A. § 2000e-3(a). To succeed on a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which . . . .means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

To establish a *prima facie* case of retaliation, a plaintiff must show (1) the plaintiff engaged in a protected action, such as filing a charge with the EEOC, (2) the defendant subjected the plaintiff to an adverse employment action, and (3) a causal link exists between the protected action and the adverse action. *See Hardage*, 427 F.3d at 1188 (citations omitted). If the plaintiff can make a *prima facie* claim, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003) (citation omitted). When the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the given reason was merely a pretext for defendant's discriminatory motive. *Id.* "[O]nly non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Hardage*, 427 F.3d at 1188.

Wing's reporting to her superiors of the alleged harassment and the subsequent reporting to the EEOC, as recognized in *Hardage*, meets the criteria of a protected action. Wing believes she was denied a promotion. If she subjectively believed the denial was a punitive measure resulting from her complaints, it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and constitute an adverse employment action. Wing alleges that she was told by superiors at AutoZone on three separate occasions that the reason she was not being promoted was due to her reporting of

sexual harassment. (Pl's SOF ¶¶ 113, 118, 119.) In response, AutoZone requests dismissal, claiming, without further proof or argument, "the EEOC has no evidence of any causal connection between any alleged adverse employment action and protected activity." (Def.'s Reply in Supp. of its Mot. for Summ. J. at 8.)  It has articulated no legitimate, nondiscriminatory reason for the action. Assuming all facts in favor of the nonmovant, as the Court is required to do, this would constitute a causal link between the protected complaint and the adverse employment action. Because AutoZone failed to articulate a legitimate, nondiscriminatory reason, AutoZone's motion for summary judgment will be denied.

## CONCLUSION

In light of the reasons set forth above,

**IT IS HEREBY ORDERED DENYING** Defendants's Motion for Summary Judgment. (Dkt. 79.)

**IT IS FURTHER ORDERED DENYING** the EEOC's request for an adverse inference. (Dkt. 103.)

**IT IS FURTHER ORDERED DENYING** as **MOOT** EEOC's Motions to Strike (Doc. 108 and 112).[4]

DATED this 10th day of September, 2008.

*/s/ Stephen M. McNamee*
Stephen M. McNamee
United States District Judge

---

[4] The Court finds that based on the supplementary briefs provided to the court, Handbook 2002 and Handbook 2004 are substantively identical, and therefore the failure of AutoZone to initially provide Handbook 2002 amounts to harmless error. Furthermore, the Court finds that a surreply is not necessary as the Court has addressed and resolved the issues within the summary judgment discussion, *supra*.

- 17 -