1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | No. CV 06-926-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| AUTOZONE, INC., a Nevada corporation, | |
| Defendant. | |

Before the Court is Plaintiff's Motion to Amend Judgment to Add Equitable Relief, filed on June 25, 2009 (Doc. 232). Defendant responded on July 8, 2009 (Doc. 234), and Plaintiff replied on July 20, 2009 (Doc. 238). The motion is now fully briefed and ready for decision.

On June 10, 2009, the jury returned a verdict in Plaintiff's favor on the hostile work environment claim but found against Plaintiff on the retaliation claim. The jury awarded Plaintiff $15,000 in compensatory damages and $50,000 in punitive damages (Doc. 216). On June 11, 2009, judgment was entered (Doc. 217). On June 25, 2009, Plaintiff filed the instant motion seeking to amend the judgment to include various forms of equitable relief (Doc. 232).

Preliminarily, Defendant objects to Plaintiff's motion based upon Plaintiff's alleged failure to include the requested relief in either the Complaint or Final Pretrial Order (Doc. 234, 4:16-5:17). In the Complaint, Plaintiff asked the Court for the following relief:

> (1) Grant a permanent injunction enjoining the Defendant . . . from engaging in any employment practice which discriminates on the basis of sex.

> (2) Order the Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female applicants and employees, and which eradicate the effects of their past unlawful employment practices.

(Doc. 1, p.3). While the request for relief in the Complaint is broad in its scope, the Final Pretrial Order asked for the specific relief requested by Plaintiff here, including

> (1) training on sexual harassment and retaliation; (2) posting of a notice regarding the company's policies against discrimination and indicating to whom reports can be made; (3) updating of policies proscribing harassment and retaliation and policies pertaining to investigation; (4) providing letter of apology to Ms. Wing; (5) providing letter of reference to Ms. Wing; (6) creating and disseminating Zero Tolerance Policy regarding sexual harassment and retaliation; [and] (7) reporting requirements to ensure non-monetary relief is implemented.

(Doc. 179, 17:8-17) The Ninth Circuit has held that "[a] pretrial order generally supersedes the pleadings, and the parties are bound by its contents." Patterson v. Hughes Aircraft Co., 11 F.3d 948, 950 (9th Cir. 1993) (citations omitted); DP Aviation v. Smiths Indus. Aerospace & Def. Sys., Ltd., 268 F.3d 829, 842 n.8 (9th Cir. 2001) (quoting Patterson). The Final Pretrial Order was the document governing the scope of the trial, and the Court finds that Plaintiff's requested relief falls within the scope of that requested in the Final Pretrial Order. Thus, the Court will not deny Plaintiff's motion for this reason.

Plaintiff requests several types of non-monetary equitable relief. When an employer engages in an unlawful employment practice, a court may "enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . any . . . equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1). "[T]he district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." Albemarle Paper Co. v. Moody, 422 U.S. 405, 418 (1975) (citation omitted). "Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination, unless the employer proves it is unlikely to repeat the practice." EEOC v. Goodyear Aerospace Corp., 813 F.2d 1539, 1544 (9th Cir. 1987) (citations omitted). The employer must demonstrate that there is no reasonable expectation that the wrong will be repeated; a failure to make such a

showing renders an injunction mandatory. <u>EEOC v. Hacienda Hotel</u>, 881 F.2d 1504, 1519 (9th Cir. 1989), <u>overruled on other grounds</u>, <u>Burrell v. Star Nursery, Inc.</u>, 170, F.3d 951 (9th Cir. 1999).

Plaintiff first requests that the Court permanently enjoin Defendant from "discriminating against any employee based on sex, including sexual harassment" (Doc. 232, 3:1-3). Such an injunction would "(1) instruct [Defendant] that it must comply with federal law, [and] (2) subject it to the contempt power of the federal courts if it commits future violations[.]" (<u>Id.</u> 3:3-5 (quoting <u>Goodyear</u>, 813 F.2d at 1544)). The Court will deny this request, as Defendant has satisfied its burden to demonstrate that a violation is unlikely to recur. There is no evidence of any other individual besides Stacy Wing at store 2737 who was subjected to sexual harassment. Furthermore, neither the harrasser Jose Contreras nor the Regional Human Resources Manager who investigated Stacy Wing's complaints, Scott Anderson, is currently employed with Defendant.

Second, Plaintiff asks that Defendant be required to implement injunctive relief, including "employee training on Title VII's prohibitions against injunctive relief for all officials with responsibilities for ensuring compliance with Title VII in its Arizona Region" (<u>Id.</u> 3:6-9). Defendant responds that it is already conducting employee training (Doc. 234, 11:25-27). Employees of store 2737 where Stacy Wing worked testified that they received the employee handbook upon their hire and knew that it contained the company's policies prohibiting harassment and methods for reporting any alleged harassment (<u>Id.</u> 11:27-12:3).[1] While Defendant makes a conclusory statement that it trains employees, it does not present any evidence as to the type of training provided. While Anderson testified at trial that all employees were required to participate in sexual harassment training (Tr. 96-97)[2], Stacy

---

[1] Defendant points to the testimony of several trial witnesses, including Johnny Millan, Luz Hernandez-Gomez, Joe Acuna, and Derrick Edwards (Trial Transcript ("Tr") 68, 120, 386-87, 391, 647-48).

[2] Citations to "Tr" refer to the trial transcript.

1 Wing testified that she never attended any such training sessions (Tr. 452-53). The alleged
2 harrasser Jose Contreras did not have a record of any training in his personnel file either (Tr.
3 185-91, 234-35).

4 The Court will grant this request because it finds that a formal training program within
5 the Phoenix Region[3] is needed for Defendant's employees, including supervisors and
6 managers as well as Human Resource officials. The training session should include (1) an
7 overview of Title VII and its purposes, (2) what constitutes sexual harassment under Title
8 VII; (3) types of prohibited activities; (4) Defendant's policies on sexual harassment,
9 including to whom to report complaints of sexual harassment; (5) promise of confidentiality
10 for persons complaining of sexual harassment; and (6) a description of the consequences for
11 harassment, including termination. This training should be conducted on a yearly basis as
12 a means of educating those in management positions about sexual harassment under Title
13 VII, and particularly, how to deal with harassment complaints.

14 Third, Plaintiff requests that Defendant be required to post a notice at all stores in the
15 Arizona Region that states "its intent to comply with Title VII; advising its employees of
16 their right to complain about or oppose sexual harassment free from retaliation; and advising
17 its employees of their right to contact federal and state antidiscrimination agencies" (Doc.
18 232, 3:13-17). Plaintiff believes that "[s]uch notice will serve the dual purpose of educating
19 Defendant's current and future employees regarding their rights and remedies under Title VII
20 and reminding Defendant of its obligation to uphold those rights" (Id. 3:19-21).

21 In its Response, Defendant argues that the evidence at trial established that it already
22 has notices regarding the company's policies prohibiting harassment and designating to
23 whom reports of harassment should be made (Doc. 234, 5:22-23). Indeed, at trial, Stacy
24 Wing testified regarding a "problem solving" poster that she saw hanging on the wall in store
25 2737 that told her whom to contact to make a complaint (Tr. 436:21-437:4; 520:20-521:2).

---

[3] Defendant points out that it does not have an "Arizona Region." Rather, Defendant has a Phoenix Region comprised of 85 stores.

This poster was the means by which Stacy Wing learned District Manager Jim Monti's phone number whom she later contacted. Based upon this evidence, the Court ordered Defendant to provide a copy of the "problem solving" poster displayed in its Phoenix Region stores (Doc 241).

On September 1, 2009, Defendant provided a copy of two posters to the Court: (1) Autozone Problem Solving Procedures and (2) Autozone Who to Call (Doc. 246). The problem solving poster generally describes the process by which an employee of Defendant can report "treatment that negatively affects your job performance or your work environment" (Doc. 246, Ex. A). Examples given include improper conduct or harassment. alleged discrimination, and improper administration of company policies and procedures (Id.). Employee complaints are to be routed to the employee's immediate supervisor/store manager, followed by the Regional Human Resources Manager, and then the Divisional Human Resources Manager (Id.). Any concerns that the employee does not feel comfortable discussing with his or her supervisor can be discussed with AutoZoner Relations (Id.). The Who to Call poster contains the contact information of the individuals referenced in the Problem Solving Poster (Doc. 246, Ex. B).

After comparing the poster currently posted in Defendant's stores with the notice proposed by the EEOC (Doc. 232, Attachment A), the Court finds that Defendant's poster is a general one directed at all types of employee complaints. While the poster does provide helpful information about whom to contact internally about a complaint, it fails to address Title VII's prohibition against discrimination based on sex, including sexual harassment. Moreover, the poster fails to describe employees' rights under Title VII or provide appropriate contact information for the Equal Employment Opportunity Commission or Arizona Civil Rights Division. The Court will grant this type of equitable relief and require updated posters with more specific information to be placed in Defendant's Phoenix Region stores. These posters are minimally intrusive, provide clear expectations regarding Defendant's conduct, and identify remedies available to employees who are the victims of discrimination. The information contained on the posters should be kept current, including

1  the addresses and phone numbers for the Equal Employment Opportunity Commission and
2  Arizona Civil Rights Division, respectively.

3  Fourth, Plaintiff asks the Court to require Defendant's Arizona Region to "investigate
4  every employee's complaint of sexual harassment during the three-year period following
5  entry of final judgment" (Doc. 232, 3:26-28). Such investigations shall include "an interview
6  with all relevant witnesses, a recording of all facts used to assess credibility, and the retention
7  all materials related to the investigation" (Id. 3:28-4:3). The Court will deny this request by
8  Plaintiff. Defendant has policies in place that give Human Resources the authority to
9  investigate harassment complaints, and the evidence at trial indicated Scott Anderson
10 conducted two investigations in June and December of 2003 (Tr. 174-76, 181-82, 441-42,
11 444, 534, 682-84). The second investigation resulted in Jose Contreras' resignation (Tr. 181-
12 82, 682-84). While the parties entered a stipulation regarding Defendant's lost records, the
13 evidence at trial demonstrated to the Court's satisfaction that the loss of documents in this
14 case was not intentional, and the existing law outlines Defendant's obligations as it pertains
15 to investigations.

16 Fifth, Plaintiff requests that Defendant "shall ensure that all officials identified by
17 [Defendant] as a person to whom an . . . employee may complain about sexual harassment,
18 will communicate the complaint to the official with authority to investigate the complaint and
19 not require the employee to make additional contacts with other officials" (Doc. 232, 4:18-
20 5:2). The Court will deny this relief. The evidence at trial showed that store managers and
21 district managers have no authority to investigate sexual harassment complaints (Tr. 213-14,
22 676). Rather, Defendant's policies required the human resources department to investigate
23 such complaints (Tr. 77, 83, 91, 134-35, 165-67). This department in fact did receive reports
24 of harassment complaints, including those of Stacy Wing. To the extent that Plaintiff is
25 asking that Defendant "ensure that the managers designated in [Defendant]'s Employee
26 Handbook as managers to which employees may complain will address the employees'
27 complaints on their own," this request amounts to a revision of Defendant's policies to
28 empower store managers to conduct investigations, and is seemingly inconsistent with having

them forward complaints to human resources (Doc. 232, 5:10-12). Moreover, the new informational posters required by this Order will guide Defendant's supervisors and managers as to their responsibilities under Title VII, while affording employees an avenue of redress should they feel they are the victim of harassment.

Sixth, Plaintiff asks the Court to impose monitoring and reporting requirements for three years. These include the requirement that Defendant retain and pay for a consultant "who shall evaluate [Defendant's] sexual harassment policies, including efforts to disseminate the policy, and training programs, and make a written report, including recommendations, and provide training during the three-year period commencing from the date of entry of final judgment in this matter." (Id. 5:14-18) Additionally, Plaintiff asks that Defendant report to the EEOC in an affidavit form every six months any changes to its policies which affect sexual harassment; the names, addresses, position, social security number, and telephone number of any employee who has brought allegations of sexual harassment against Defendant's personnel; and the registry of persons attending each training seminar and a list of current personnel employed by Defendant on the day(s) of the seminar training session(s) within thirty (30) days after each training seminar (Id. 6:7-20).

The Court will deny this relief. Although the jury found that Defendant engaged in unlawful discrimination, one instance of such conduct in a company with 2,500 employees in Arizona does not warrant the imposition of monitoring and reporting requirements. The monetary judgment imposed in this case, as well as the Court's Order that Defendant conduct employee training and post notices concerning Title VII compliance constitute sufficient sanctions for the single instance of a hostile work environment established at trial.

Finally, Plaintiff requests that Defendant provide "training on Title VII" by a consultant approved by the EEOC (Doc. 232, 6:21-8:6). The Court has discussed above the training that it feels is appropriate.

The Court is not insensitive to the challenges confronting Defendant from a fluid and ever-changing workforce. Employees, however, should be protected through consistent, well-monitored, and adequately enforced workplace policies.

1 | Accordingly,

2 | **IT IS HEREBY ORDERED** granting in part and denying in part Plaintiff's Motion to Amend Judgment to Add Equitable Relief (Doc. 232).

**IT IS FURTHER ORDERED** that a training program shall be established for Defendant's employees in the Phoenix Region, including supervisors and managers as well as Human Resource officials. The training session should include (1) an overview of Title VII and its purposes, (2) what constitutes sexual harassment under Title VII; (3) types of prohibited activities; (4) Defendant's policies on sexual harassment, including to whom to report complaints of sexual harassment; (5) promise of confidentiality for persons complaining of sexual harassment; and (6) a description of the consequences for harassment, including termination. Employees shall be trained on a yearly basis as a means of educating those in management positions about sexual harassment under Title VII, and particularly, how to deal with harassment complaints.

**IT IS FURTHER ORDERED** that Defendant shall post a poster at all stores in the Phoenix Region. The poster shall be displayed in a prominent location in the store frequented by Defendant's employees. Additionally, the poster shall explain Defendant's responsibilities and the employees' rights under Title VII, including the employees' right to complain about or oppose sexual harassment, and shall provide contact information for the Phoenix office of the Equal Employment Opportunity Commission and the Arizona Civil Rights Division. The contact information on the poster shall be kept updated, including the addresses and phone numbers for the Equal Employment Opportunity Commission and Arizona Civil Rights Division.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction over equitable relief should this Order have to be modified in the future due to changed circumstances.

**IT IS FURTHER ORDERED** that the Clerk shall enter an amended judgment in this case that includes the Court's ruling on equitable relief.

DATED this 9th day of November, 2009.

_____
Stephen M. McNamee
United States District Judge